UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CENTRAL NEW YORK FAIR BUSINESS
ASSOCIATION; CITIZENS EQUAL RIGHTS
ALLIANCE; DAVID R. TOWNSEND, New York
State Assemblyman; MICHAEL J. HENNESSY,
Oneida County Legislator; JACK B. GARDNER,
Oneida County Legislator; MELVIN L. PHILLIPS;
RICHARD TALLCOT; and JERRY TITUS;

                              Plaintiffs,

   -v-                                    6:06-CV-1501

DIRK KEMPTHORNE, Secretary of the Interior,
in his official capacity; CARL J. ARTMAN, Associate
Secretary of Indian Affairs; JAMES E. CASON,
Associate Deputy, Secretary of Interior; FRANKLIN
KEEL, Eastern Regional Director of the Bureau of
Indian Affairs; KURT G. CHANDLER, Eastern
Regional Environmental Scientist;

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

CLAUDIA L. TENNEY, ESQ.
Attorney for Plaintiffs
28 Robinson Road
Clinton, NY 13323

JAMES J. DEVINE, JR., ESQ.
Attorney for Plaintiff
128 Main Street
Oneida, NY 13421

ATTORNEY GENERAL OF THE        MATT MCKEOWN, ESQ.
   UNITED STATES                       Acting Ass't Attorney General
Attorney for Defendants                AMY S. TRYON, ESQ.
United States Department of Justice    Trial Attorney
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, DC 20026-4378

| | |
|---|---|
| OFFICE OF THE SOLICITOR<br>Attorneys for Defendants<br>Department of the Interior<br>1849 C. Street, NW<br>Washington, DC 20240 | TOM BLASER, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiffs filed this action seeking declaratory and injunctive relief related to the Bureau of Indian Affairs ("BIA") handling of land-into-trust applications filed by several Indian tribes in New York State, as detailed below. They assert that federal question jurisdiction exists under 28 U.S.C. § 1331, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 500-596, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Plaintiffs further assert that the United States has waived its sovereign immunity from suit under 5 U.S.C. § 702 and 28 U.S.C. § 2209(a).

In lieu of an answer defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (6). Plaintiffs opposed. Oral argument was heard on May 14, 2007, in Utica, New York. Decision was reserved.

## II. BACKGROUND

### A. Statutory Framework

The following is a brief explanation the statutory framework in which the issues in this case arise. Greater depth into the land-into-trust application process and the environmental impact assessment requirements for agency actions, and their interplay as in this case, is unnecessary to resolve the issues presented here.

The Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 461-479, permits the Secretary of the Interior ("Secretary") to take, in certain circumstances, lands into trust to benefit Indian tribes. Id. § 465; Conn. ex rel. Blumenthal v. U.S. Dep't of Interior, 228 F.3d 82, 85 (2d Cir. 2000). The determination of whether to take certain land into trust lies in the discretion of the Secretary, following the procedures set forth in Title 25, Part 151 of the Code of Federal Regulations. Conn. ex rel. Blumenthal, 228 F.3d at 85. In order to make that determination the

> Secretary must consider, among other things, "(b) The need of the individual Indian or the tribe for additional land; (c) The purposes for which the land will be used; (d) If the land is to be acquired for an individual Indian, the amount of trust or restricted land already owned by or for that individual and the degree to which he needs assistance in handling his affairs; (e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls; [and] (f) Jurisdictional problems and potential conflicts of land use which may arise."

Id. at 85 n.1 (quoting 25 C.F.R. § 151.10).

In addition, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, requires that the environmental impact of a proposed federal agency action, such as the BIA taking land into trust, be considered. See 40 C.F.R. § 1500.1; Nat'l Audubon Soc'y v. Hoffman, 132 F.3d 7, 12 (2d Cir. 1997) (discussing the NEPA requirement for preparation of a "detailed statement on the environmental impact" of "'major Federal actions significantly affecting the quality of the human environment'" (quoting 42 U.S.C. § 4332(2)(C)(i)). An agency such as the BIA contemplating undertaking a "major Federal action" must first determine if the "proposed action significantly affects the environment, thus necessitating the preparation of an" Environmental Impact Statement ("EIS"). Nat'l Audubon Soc'y, 132 F.3d at 12. If it is unclear whether the proposal constitutes a major federal action requiring an

EIS, then an Environmental Assessment ("EA") must be prepared. Id. (citing 40 C.F.R. §§ 1501.3, 1501.4, 1508.9). If the EA concludes that the action would have significant affect on the environment, then an EIS must be prepared. Id.

Ordinarily a site-specific EIS is prepared in accordance with the regulations. However, in some instances, an agency may take a programmatic approach to EIS preparation. Such an approach may be appropriate "in certain situations where several proposed actions are pending at the same time." Kleppe v. Sierra Club, 427 U.S. 390, 409, 96 S. Ct. 2718, 2730 (1976). For example, where there are several proposed agency actions "that will have cumulative or synergistic environmental impact upon a region" it may be necessary to conduct a "comprehensive consideration of pending proposals [so] the agency [can] evaluate different courses of action." Id. at 410, 96 S. Ct. at 2730; see also Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1356 (9th Cir. 1994) (discussing the use of comprehensive programmatic impact statement prepared in conjunction with forest plans prepared pursuant to the National Forest Management Act).

In any event, a site-specific or programmatic EIS must be prepared if it has been determined that a proposed agency action will significantly affect the environment. Once an EIS has been prepared, the environmental assessment is complete.[1]

However, preparation of an EIS is not required if the EA concludes that there will not be a significant impact on the environment. Nat'l Audubon Soc'y, 132 F.3d at 13. In this

---

[1] As noted above, this is a simplified overview of the process to provide a context for the issues presented. The regulations provide for a much more detailed process, including evaluation of alternatives, mitigation, and public comments. These details, however, are unimportant to the issues here.

circumstance, there would be a Finding of No Significant Impact ("FONSI") and the environmental assessment would be complete.[2]  40 C.F.R. § 1501.4(e).

The applicable EIS or FONSI is considered by the Secretary in determining it course of action with regard to a land-into-trust application under the IRA.  See 25 C.F.R. § 151.10.

Once land is taken into trust pursuant to § 465 of the IRA, it is no longer taxable by local and state governments, zoning requirements no longer apply to it, and it is not subject to the state civil or criminal justice system unless the tribe consents.  Conn. ex rel. Blumenthal, 228 F.3d at 85-86.

## B.  Facts

There are five[3] land-into-trust applications pending before the Secretary with regard to land within New York State.

In April 2005 the Oneida Indian Nation of New York applied for trust acquisition for approximately 17,000 acres in Oneida and Madison Counties.  The trust application stated that no change in use of the land was anticipated.  A draft EIS has been completed.

The St. Regis Mohawk Tribe filed an application for trust acquisition of 29.31 acres in Sullivan County.  The land is currently occupied by a wagering raceway and a parking lot.  A casino project is proposed for the land.  An EA was updated and a FONSI was issued on December 21, 2006.  However, the Secretary has not issued a decision on the trust application.

---

[2] See supra note 1.

[3] The Cayuga Nation of Indians of New York submitted two applications which were consolidated.  The consolidated applications are treated as one; therefore, the total number of applications pending is five (not six).

In 2005 the Cayuga Nation of Indians of New York submitted two applications to take into trust land totaling 130 acres located in Seneca and Cayuga Counties. These two applications were consolidated. Various uses were listed for the land and some of the land is intended to remain vacant. The Secretary is currently preparing a draft EIS.

The Seneca-Cayuga Tribe of Oklahoma, in 2006, applied for trust acquisition of 229 acres of land in Cayuga County. The proposed use of the land is to conduct gaming. No NEPA documentation has been prepared for this application.

In 2006 the Oneida Tribe of Indians of Wisconsin submitted a land-into-trust application for slightly more than 2 acres in Madison County. The Oneida of Wisconsin propose construction of a tribal office on the parcel. No NEPA documentation has been prepared.

## III. MOTION TO DISMISS STANDARD

An action must be dismissed when the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1), (h)(3); United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994). The party asserting subject matter jurisdiction has the burden of proving that such jurisdiction exists. United Food & Commercial Workers Union, Local 919, 30 F.3d at 301; Greenery Rehab. Group, Inc. v. Sabol, 841 F. Supp. 58, 61 (N.D.N.Y. 1993)(citing Thomson v. Gaskill, 315 U.S. 442, 62 S. Ct. 673 (1942)). A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) must be considered before any other motions, as a finding of lack of jurisdiction would render other objections and defenses moot. Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

A cause of action shall not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In considering a motion brought pursuant to Fed. R. Civ. P. 12(b), the court must assume all of the allegations in the complaint are true. Id. In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

## IV. DISCUSSION

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Subject matter jurisdiction is a threshold matter; therefore, defendants' 12(b)(1) motion must be considered first. See Rhulen Agency, Inc., 896 F.2d at 678.

Defendants argue that subject matter is lacking because plaintiffs' claims are not ripe. Plaintiffs bring two claims.[4] First plaintiffs claim that the Secretary's failure to require a programmatic EIS concerning all land-into-trust applications related to land within New York State (rather than a site-specific EIS for each individual application) is arbitrary, capricious, and contrary to law. Second plaintiffs claim that the Secretary exceeded the authority granted by 25 U.S.C. § 465 in promulgating the Part 151 regulations which allow land owned in fee by Indian tribes to be taken into trust status. Thus, the essence of both of plaintiffs'

---

[4] Perusal of the 89-paragraph complaint does not reveal these claims. Rather, plaintiffs' opposition submissions clarify their claims. (See Pltfs.' Mem. at 9-10.)

claims is a challenge to actions of the Secretary, made on behalf of the Department of the Interior, a federal agency.

Judicial review of federal agency decisions is available pursuant to the Administrative Procedures Act.[5] 5 U.S.C. § 702; Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882, 110 S. Ct. 3177, 3185 (1990). Section 702 provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. To fall within the ambit of section 702, the party challenging the agency action must identify the "'agency action' that affects him in the specified fashion." Lujan, 497 U.S. at 882, 110 S. Ct. at 3185. When relying upon the general review provisions of section 702 (where there is no statutory authorization for review), "the 'agency action' in question must be 'final agency action.'" Id. In addition to identifying the agency action, the aggrieved party must show that he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" Id. at 883, 110 S. Ct. at 3186. In order to meet this second requirement, the party "must establish that the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Id.

In this case, plaintiffs allege violations of the IRA and NEPA by the Secretary have adversely affected them. More specifically, plaintiffs claim that the Part 151 regulations which permit the Secretary to take land owned in fee by Indian tribes into trust status

---

[5] Review may also be available pursuant to a substantive statutory provision. See Salmon River Concerned Citizens, 32 F.3d at 1353-54. However, "NEPA does not provide a private cause of action for violations of its provisions." Id. at 1346 n.13.

- 8 -

exceeds statutory authority. However, none of the applications for land-into-trust of which plaintiff complains has been acted upon by the Secretary. There is no final agency action for judicial review. See Top Choice Distribs., Inc. v. U.S. Postal Serv., 138 F.3d 463, 467 (2d Cir. 1998) (finding there was no final agency action where an administrative complaint was been filed but had not yet been resolved); see also Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808, 123 S. Ct. 2026, 2030 (2003) (finding claim challenging agency regulation is not ripe for judicial review under the APA until there is "some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him").[6]

Further, plaintiffs claim that the Secretary's failure to require a programmatic EIS violates NEPA. The environmental evaluations required by NEPA are but one part of the matters considered by the Secretary in deciding whether to grant or deny a land-into-trust application. See 25 C.F.R. § 151.10. Moreover, preparation of site-specific versus programmatic EISs has no effect on the legal rights of the parties and no legal consequences to them flow from it. See Top Choice Distribs., Inc., 138 F.3d at 466 (agency action is not final until "rights or obligations have been determined or from which legal consequences will flow"). Thus, again there is no final agency action available for review because the Secretary has not made a decision on the applications for trust status.

---

[6] Even if plaintiffs' claim were analyzed according to the Abbott Labs. paradigm followed in Nat'l Park Hospitality Ass'n, which neither plaintiffs nor defendants suggest should be done, the conclusion would be the same. See Nat'l Park Hospitality Ass'n, 538 U.S. at 807-08, 123 S. Ct. at 2030 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 149, 87 S. Ct. 1507, 1507 (1967)). That is, plaintiffs' claim regarding the Part 151 regulations is not ripe for review because it is not "fit for judicial decision" in that there was no action applying to plaintiffs' situation and "withholding court consideration" will not create a hardship for the parties. See id. at 808, 123 S. Ct. at 2030; Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733, 118 S. Ct. 1665, 1670 (1998) (further delineating factors to be considered in determining hardship).

Additionally, even if action under NEPA were to be considered as the agency action being reviewed, there would be no "final" action because no final reports as required by NEPA (that is EIS and/or FONSI) have been issued. Plaintiffs' citation to Nevada v. Dep't of Energy, 457 F.3d 78, 87-92 (D.C. Cir. 2006), for the proposition that when a reasonable alternative was not considered during the NEPA process the issue was ripe for review is unavailing. Contrary to plaintiffs' assertion, the Nevada Court found that the discussion of an interim plan did not constitute a final determination, and thus a challenge to it was not ripe for review. Id. at 84. The court elaborated that the issue would not become ripe until the interim plan was "sufficiently 'crystallized' and the [final] EIS is used to support a concrete decision" not to prepare a supplemental EIS. Id. at 84-85. Finding that it was not ripe for judicial review, the court also rejected a challenge to a Record of Decision, implementation of which was contingent upon various factors. Id. at 85. In Nevada, plaintiff objected to what it claimed were several procedural violations of NEPA during the review process. See id. at 87-93. The court's analysis of these claimed NEPA violations does not support plaintiffs' position in this case because the challenges were brought after a final EIS was issued. See id.

Plaintiff contends that the agency action was final at the time when the Secretary accepted the land-into-trust applications. There are at least two difficulties with plaintiffs' argument. First, there is no identifiable "agency action" in acceptance of the applications. The Secretary has not acted by merely taking applications submitted to it by the tribes. See Lujan, 497 U.S. at 890, 110 S. Ct. at 3189 (noting several proffered agency actions that have been rejected: "land withdrawal review program," "weapons procurement program," and

"drug interdiction program"); Top Choice Distribs., Inc., 138 F.3d at 467 (rejecting the filing of an administrative complaint proffered to be a final agency action).

Second, even if acceptance of the applications constituted "final agency action," plaintiffs do not (and could not) allege how they were aggrieved by the acceptance of the applications. Therefore, plaintiffs' claims would fail because they could not meet the second "adversely affected or aggrieved" requirement for judicial review. See Lujan, 497 U.S. at 883, 110 S. Ct. at 3186.

Finally, considering the acceptance of the applications as the final agency action would be inconsistent with plaintiffs' own claims. This is so because the actions (or failures to act) of which plaintiffs complain occurred after acceptance of the applications. For example, plaintiffs complain about the Secretary's failure to require a programmatic EIS, an action that necessarily followed acceptance of the applications. Plaintiffs also complain of the Secretary permitting land held in fee to be taken into trust--again, taking land held in fee into trust (or even considering whether to do so) necessarily follows acceptance of a land-into-trust application. Thus, in light of plaintiffs' own claims, acceptance of the applications cannot be the final agency action being challenged.

Because the Secretary has not taken any final action on the land-into-trust applications, subject matter jurisdiction over plaintiffs' claims pursuant to the Administrative Procedure Act is lacking. Therefore, plaintiffs' claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Because subject matter jurisdiction is lacking, defendants' contention that plaintiffs fail to state a claim is moot.

## V. **CONCLUSION**

The land-into-trust applications at issue are all pending a final resolution by the Secretary. Moreover, each is at a different stage in the environmental assessment process under NEPA. Because the Administrative Procedure Act requires that any challenge be to a "final agency action," and there is no "final agency action" with regard to the land-into-trust applications, subject matter jurisdiction is lacking pursuant to Rule 12(b)(1). The complaint must be dismissed. Given this determination it is unnecessary to address defendants' Rule 12(b)(6) arguments.

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 1, 2007
        Utica, New York.